# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 2

Tania Gerving, nka Tania Tschaekofske,

aka Tania Hintz,                                                                    Plaintiff

v.

Dean Gerving,                                          Defendant and Appellant

and

State of North Dakota,          Statutory Real Party in Interest and Appellee

### No. 20210074

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

Erica J. Shively (argued) and Elizabeth A. Elsberry (appeared), Bismarck, ND, for defendant and appellant.

Sheila K. Keller, Special Assistant Attorney General, Bismarck, ND, for statutory real party in interest and appellee.

**VandeWalle, Justice.**

[¶1]   Dean Gerving appealed from a second amended judgment modifying his child support obligation. Gerving argues the district court erred in calculating his net income and erred by denying his request for a downward deviation in his child support obligation based on his payment of the child's private school tuition. We affirm the district court's denial of Gerving's request for a downward deviation, but we conclude the court erred in calculating Gerving's net income. We reverse the court's child support decision and remand for the court to properly calculate Gerving's net income and child support obligation.

I

[¶2]   In 2017, Gerving and Tania Gerving, now known as Tania Tschaekofske, divorced. They have two children together and agreed to have equal residential responsibility for the children. A 2017 amended judgment ordered Gerving to pay Tschaekofske $127 per month in child support for the two children after offsetting the parties' child support obligations.

[¶3]   The parties' older child is no longer a minor. In 2020, the State moved to modify the child support obligation. The State alleged Gerving is self-employed, his average gross annual income is $361,339 from his self-employment activities and gains, his net monthly income is $21,214, his child support obligation should be modified to $3,129 per month under the child support guidelines, and he should pay $2,444 per month in child support after the parties' support obligations are offset.

[¶4] Gerving opposed the State's motion to increase his child support payments, arguing the State did not correctly apply the child support guidelines to determine the proposed amount of child support and the calculations do not accurately reflect his income. He also moved to modify the division of the child's expenses, arguing the parties agreed he would pay all of the child's private school tuition when the parties divorced in 2017 and the expense needed to be re-divided if his child support obligation increased.

[¶5] After a hearing, the district court considered the parties' arguments and their proposed child support calculations, found Gerving is a self-employed farmer, and said the State's child support calculations did not give Gerving credit for depreciation deductions. The court ordered the State and Gerving to submit updated child support calculations consistent with the court's order, specifically including the depreciation deductions when calculating Gerving's net income. The State sent the court a letter explaining the depreciation deductions were considered in calculating any gains in its child support calculations.

[¶6] The district court granted the State's motion to modify child support and adopted the State's child support calculations. The court determined Gerving's five-year average income from self-employment activities, and found Gerving has a net monthly income of $21,214 and his child support obligation is $3,129 per month. The court found Tschaekofske has a net monthly income of $3,734 and her child support obligation is $701 per month. The court offset the parties' child support obligations and ordered Gerving to pay Tschaekofske $2,428 per month in child support for one child. A second amended judgment was entered.

II

[¶7] Child support determinations involve questions of law which are fully reviewable, findings of fact subject to the clearly erroneous standard of review, and some matters of discretion subject to the abuse of discretion standard of review. *Eubanks v. Fisketjon*, 2021 ND 124, ¶ 6, 962 N.W.2d 427. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, after reviewing the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.*

III

[¶8] Gerving argues the district court erred in calculating his net income in order to determine his child support obligation.

[¶9] The district court must comply with the child support guidelines in calculating a parent's child support obligation, and the court errs as a matter

of law when it does not comply with the guidelines. *Gooss v. Gooss*, 2020 ND 233, ¶ 15, 951 N.W.2d 247. The interpretation and proper application of the child support guidelines is a question of law, which is fully reviewable on appeal. *Id.* "The failure to properly apply the child support guidelines to the facts involves an error of law." *Id.* (quoting *State ex rel. K.B.*, 2009 ND 45, ¶ 8, 763 N.W.2d 462).

[¶10] To determine an obligor's child support obligation, the district court is required to determine the obligor's net income and apply that amount to the child support guidelines to calculate the support obligation. *Eubanks*, 2021 ND 124, ¶ 7. The obligor's net income from all sources must be considered. N.D. Admin. Code § 75-02-04.1-02(3). "[A] proper finding of net income is essential to determine the correct amount of child support." *Halberg v. Halberg*, 2010 ND 20, ¶ 10, 777 N.W.2d 872 (quoting *Gunia v. Gunia*, 2009 ND 32, ¶ 13, 763 N.W.2d 455). The court must determine the obligor's gross income and then deduct the items listed in N.D. Admin. Code § 75-02-04.1-01(6) to determine net income. *See Halberg*, at ¶ 10.

[¶11] The child support guidelines define gross income as "income from any source, in any form." N.D. Admin. Code § 75-02-04.1-01(4). Examples of gross income include gains and net income from self-employment, but nonrecurring capital gains are expressly excluded from the definition of gross income. *Id.* The guidelines also define self-employment, stating:

> "Self-employment" means employment that results in an obligor earning income from any business organization or entity which the obligor is, to a significant extent, able to directly or indirectly control. For purposes of this chapter, it also includes any activity that generates income from rental property, royalties, business gains, partnerships, trusts, corporations, and any other organization or entity regardless of form and regardless of whether such activity would be considered self-employment activity under the Internal Revenue Code.

N.D. Admin. Code § 75-02-04.1-01(10).

[¶12] Section 75-02-04.1-05, N.D. Admin. Code, governs how net income from self-employment is calculated and requires the district court to average the income over a period of time. Net income from self-employment is "total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75-02-04.1-05(1). The guidelines anticipate an obligor's income from self-employment may fluctuate and require the court to average the income from each self-employment activity over a period of time:

> Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income.

N.D. Admin. Code § 75-02-04.1-05(4). The guidelines also regulate when a loss from a self-employment activity may be used to reduce other income, stating, "When three or more years were averaged . . . a loss resulting from the averaging may be used to reduce other income that is not related to the self-employment activity that produced the loss only if the loss is not related to a hobby activity, [and] losses were calculated for no more than forty percent of the years averaged." N.D. Admin. Code § 75-02-04.1-05(7).

[¶13] The district court adopted the State's child support calculations. The court found Gerving has various self-employment activities, including his farming and ranching operation, a partnership with his brother that owns real property (Gerving Brothers LLP), a subchapter S corporation that purchased real property, some of which Gerving rents for his farming operation (Gerving, Inc.), rental income from a property in Bismarck, and rental income from land that he subleases. The court calculated Gerving's average income from each of these sources and his average gains listed on his tax returns from the sale of cattle and farm equipment. The court made findings about Gerving's self-employment income from his farming and ranching operation, stating:

> [Gerving's] personal tax returns reflect that he had a net loss of income from [the farming and ranching operation] in three of the five years considered. According to his tax returns, this operation had the following income amounts:

4

| 2015 | ($208,471) |
| 2016 | $7,940 |
| 2017 | $40,358 |
| 2018 | ($692,719) |
| 2019 | ($921,002) |
| Total: | ($1,773,894) / 5 = ($354,779) |

The court found Gerving reported a net loss for the farming operation in three of the last five years, he had losses in more than forty percent of the years considered, and therefore the average loss cannot be used to reduce other income and the loss must be excluded from the calculation of his income from self-employment. The court found Gerving's business gains from traded farm equipment and the sale of cattle are recurring gains because Gerving had gains in each of the five years. The court concluded the gains must be included in Gerving's income and determined the five-year average:

> For 2015 through 2019, [Gerving's] 1040 forms and, for 2018 and 2019, his Schedule 1 forms, include as gross income the gains realized from the sale or trade of his farm equipment and other business property. Based on his personal tax returns, [Gerving] reported the following total gains:
>
> | 2015 | $33,801 |
> | 2016 | $73,880 |
> | 2017 | $11,169 |
> | 2018 | $936,872 |
> | 2019 | $573,515 |
> | Total | $1,629,237 / 5 = $325,847 |

The court calculated Gerving's net monthly income and child support obligation:

> Based on the calculation of income from [Gerving's] different self-employment activities, and his gains, the following comprises his total annual gross income for child support purposes:
>
> | Gains: | $325,847 |
> | Gerving, Inc: | $10,999 |
> | Gerving Brothers, LLP: | $77 |
> | Land Rental: | $24,416 |
>
> This is a total of $361,339 as [Gerving's] gross income for child support purposes. After deductions for federal and state income

taxes, and his self-employment tax, [Gerving] has a net monthly income of $21,214, resulting in a child support obligation of $3,129.00.

A

[¶14] Gerving argues the district court erred by excluding the losses from his farming operation and including the gains to determine his net income from self-employment. He contends the court erroneously separated his farm income and losses from his farm gains, which created an inaccurate picture of his overall farm income. He claims his farming operation has not changed since the last time child support was calculated in 2017, but the court used a calculation increasing his child support obligation from $701 for two children to $3,129 for one child. He contends the only change was a major overhaul to federal tax law through the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97 (2017) (TCJA), the TCJA changed how gains are reported and how depreciation may be handled, and these changes resulted in "phantom income" on his returns without him receiving any money.

[¶15] The child support guidelines require the district court to calculate the five-year average from "each self-employment activity" in order to determine an obligor's self-employment income. N.D. Admin. Code § 75-02-04.1-05(4). Any activity that generates business gains is a self-employment activity. N.D. Admin. Code § 75-02-04.1-01(10). The child support guidelines specifically exclude nonrecurring capital gains from an obligor's gross income and this Court has previously recognized that gains from the sale of farm equipment may be nonrecurring gains at least under some circumstances. *See, e.g., Berge v. Berge*, 2006 ND 46, ¶¶ 3, 14, 710 N.W.2d 417; *Longtine v. Yeado*, 1997 ND 166, ¶¶ 3, 12, 567 N.W.2d 819. The Department of Human Services explained its decision to amend the guidelines to exclude nonrecurring capital gains from gross income, stating, "[A]lthough a capital gain is treated as income for tax purposes, the cash received is more in the nature of an asset than income and, accordingly, should not be includible in gross income for guidelines purposes." N.D. Dep't Human Servs., *Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75-02-04.1 Child Support Guidelines*, 1 (April 7, 2015). Gerving did not argue to the district court that

the gains were nonrecurring and he does not argue on appeal that the district court erred in concluding all of the gains are recurring. Therefore we will not address the issue of whether the court erred in finding all of the gains were recurring.

[¶16] Gerving testified he is self-employed as a farmer and rancher and he owns his own farming and ranching operation. He testified he trades in tractors and combines each year, he uses the equipment in the farming operation, he rotates which equipment he trades, and he trades equipment regularly to keep his repair bills down and to keep the equipment under warranty. He testified that any money he receives from selling cattle is reinvested in the farming and ranching operation and the bank requires him to use the funds to buy new cows or bulls to keep his herd at the same level, there are times he has to borrow money to keep the herd at the same level, and those additional funds to purchase new cattle come from his operating loan. Steve Eckroth, Gerving's accountant, testified the expenses related to the farm equipment and the depreciation on the equipment were included in the net farming income. He also testified that any money received from the sale of cattle was either used to purchase new cattle to replace those sold or it would have been used to pay on operating debt.

[¶17] Gerving testified that some of the capital gains for the last two years were from trading in farm equipment and he did not receive any money for that equipment. He testified that he also had some gains from selling cattle and minor equipment that dealerships will not trade-in. Gerving testified his capital gains increased greatly in 2018 and 2019 because the tax laws changed and now include capital gains on traded equipment. Eckroth testified the tax law changed in 2017 with the TCJA, including the reporting requirements for traded equipment. He testified that under the prior tax law if a person bought a combine for $300,000 and traded one in for $200,000 the tax return would only show the difference of $100,000 and the person would depreciate that amount. He testified under the new tax law the trade-in value is reported as if the asset was sold and then the full purchase price of the new equipment is depreciated, so the new combine is now listed for $300,000 on the depreciation schedule and the traded combine is shown as if it had been sold for $200,000.

7

Eckroth also testified Dean Gerving never received any money for the traded equipment.

[¶18] The farming and ranching operation and the sale of cattle and the practice of trading machinery used in the farming and ranching operation are related activities. The expenses related to the farm machinery and cattle are included in the farming and ranching operation, including loans to purchase the equipment and cattle, feed for the cattle, and other expenses. The evidence established the expenses related to the gains were included in the farming and ranching operation income. The guidelines require the district court to calculate the "net income from self-employment." The court excluded the expenses related to the gains and only considered the gains. The court calculated Gerving's gross income from gains without considering the activity that led to the gains. The court improperly treated the gains from the sales of the cattle and the trade-in equipment as an unrelated self-employment activity.

[¶19] The plain language of the child support guidelines requires using the losses from the farming and ranching operation to reduce the capital gains related to the farming and ranching operation. Under the guidelines a loss from self-employment income may not be used to reduce other unrelated income if the losses were calculated for more than forty percent of the years averaged. Section 75-02-04.1-05(7), N.D. Admin. Code, states, "When three or more years were averaged . . ., a loss resulting from the averaging may be used to reduce *other income that is not related to the self-employment activity that produced the loss* only if the loss is not related to a hobby activity, [and] losses were calculated for no more than forty percent of the years averaged." (Emphasis added). The plain language of the child support guidelines does not preclude using the loss to reduce income that is related to the self-employment activity that produced the loss. In this case, the evidence established the income from the gains is related to the farming and ranching operation that produced the loss, and therefore the loss from the farming and ranching operation may be used to reduce income from the related gains.

8

[¶20] The income or gains from self-employment activities cannot be separated from the expenses related to those activities and only the income considered to determine net income from self-employment. The losses from the farming and ranching operation and the gains from selling cattle and trading in the farming equipment are related and must be considered together. We conclude the district court erred in calculating Gerving's income from self-employment.

B

[¶21] Gerving argues the district court erred in excluding depreciation from traded farm equipment after ordering the parties to include it in their proposed child support calculations. Gerving contends he had atypical gains in 2018 and 2019 due to changes in the federal tax law. Gerving claims the TCJA requires the equipment traded in to be reported as if it had been sold, resulting in phantom income, and the TCJA also allows the new equipment to be fully depreciated in the same year, which is a bonus depreciation. He contends the bonus depreciation from the new equipment counteracts or balances the phantom income from the gain resulting from the traded equipment and the bonus depreciation should be considered when calculating his income from the gains.

[¶22] The district court entered an order on the State's motion to modify support, explained the recent changes to the tax law, and said the State's calculations ignored the depreciation permitted under the current tax code. The court ordered Gerving's net income should not include the full value of the traded equipment without considering the permitted deductions under the tax code. The court later adopted the State's calculations and found the depreciation for each piece of business property sold or traded was taken into consideration.

[¶23] This Court has said a district court cannot add depreciation deductions back into an obligor's net income when determining a child support obligation. *Clark v. Clark*, 2006 ND 182, ¶ 27, 721 N.W.2d 6. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75-02-04.1-05(1). The guidelines use an obligor's total income from tax returns to determine child support without adding

9

depreciation back into an obligor's net income. *Torgerson v. Torgerson*, 2003 ND 150, ¶ 14, 669 N.W.2d 98.

[¶24] There was no evidence of an error related to the depreciation on Gerving's tax returns. The district court did not add any depreciation back into Gerving's net income. The depreciation on the farm equipment was accounted for in calculating the income from the farming operation. The district court did not err by failing to add additional depreciation to offset the gains from the traded equipment. However, the court must use any losses from the farming operation to reduce the income from the gains on remand, which will allow the depreciation and the gains from the farm equipment to be considered together.

C

[¶25] Gerving argues the district court erred in including land rent as income. He contends he sublets grazing land that was part of the land he rents from the landowner, he pays the landowner rent for the farmland and the sublessor's share of the rent for the grazing land, and the court did not consider the expenses related to the rental land.

[¶26] The district court included the rental income to calculate Gerving's net income for child support, finding:

> [Gerving] also reports income from the rental of land. While [he] contends that he realizes no actual income from this property, because it is the sub-lease of real property he rents from others, it was confirmed by his accountant that he claims the expenses of this sub-leased land on [his] personal tax returns. Therefore, it is income for purposes of child support calculations. Since he claimed the expenses associated with the sub-leased acreage, the rental payments are reported as income. Pursuant to his personal tax returns, he reported the following amounts on IRS Schedule E:
>
> | | |
> |---|---|
> | 2015 | $40,241 |
> | 2016 | $31,072 |
> | 2017 | $27,649 |
> | 2018 | $11,486 |
> | 2019 | $11,634 |
> | Total | $122,082 / 5 = $24,416 |

This five-year average net income from self-employment must be included in [Gerving's] total net income from self-employment.

[¶27] Income from rental property is income from self-employment and must be included in calculating the obligor's gross income. N.D. Admin. Code § 75-02-04.1-01(4) and (10).

[¶28] Gerving testified all of the rental income he receives from land is from subleasing land to another individual. He testified he rents land from the landowner, the land has grazing land with it, he does not use the grazing land, the landowner asks him to find someone to sublease the grazing land, the rental rate is determined by the landowner, and he is required by his contract with the landowner to sublease the grazing land at the same rate he pays to the landowner to rent that land. He testified that he does not make any money off the transaction.

[¶29] Eckroth testified that he did not know the land Gerving was renting out was subleased when he did Gerving's tax returns, and because he did not know the rental land was a sublease arrangement the expenses for the property are not accurately reported on the tax returns. He testified the rent expense that Gerving paid should not have been included with the farm expenses and should be on the same schedule as the rental income to reflect the expenses were for the rental property. He testified Gerving does not receive any net income from the rental property because he is required to rent it out for the same amount he pays the landowner.

[¶30] Net income from self-employment is total income for internal revenue service purposes. N.D. Admin. Code § 75-02-04.1-05(1). Evidence established the expenses for the rental income were included on the tax returns in an improper location and were included in calculating the self-employment income from the farm and ranch operation. There was an error on the tax returns and the tax returns did not accurately reflect Gerving's income from the rental property. The expenses for the rental property need to be properly included with the income from that self-employment activity to determine Gerving's net income from the rental property and should not be included in calculating his self-employment income from the farming and ranching

11

operation. The district court erred by failing to consider the expenses when it calculated Gerving's net self-employment income from the rental property.

IV

[¶31] Gerving argues the district court erred by failing to allow a deviation in the amount of his child support obligation for payment of the child's private school tuition. He contends he should have been allowed a deviation under N.D. Admin. Code § 75-02-04.1-09(2)(c).

[¶32] The district court has discretion to grant a child support deviation. *Gooss*, 2020 ND 233, ¶ 17. A court abuses its discretion when it acts in an unreasonable, unconscionable, or arbitrary manner or when its decision is not the product of a rational mental process. *Id.* There is a presumption that the amount of child support resulting from the application of the guidelines is the correct amount. N.D. Admin. Code § 75-02-04.1-09(1). However, the presumption may be rebutted "if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and . . . [t]he increased need if educational costs have been voluntarily incurred, at private schools, with the prior written concurrence of the obligor." N.D. Admin. Code § 75-02-04.1-09(2)(c).

[¶33] The district court found Gerving is required to pay the tuition for the child's private school under the terms of the divorce judgment. The court ordered Gerving shall continue to be obligated to pay the child's private school tuition and that obligation has no impact on the child support calculation.

[¶34] The parties filed a stipulated divorce settlement agreement and parenting plan, which included an agreement that Gerving "agrees to continue to be responsible for [the children's] school tuition until they graduate from high school." The stipulation was adopted by the district court and incorporated into the divorce judgment. The district court did not abuse its discretion by denying Gerving's request for a deviation in the amount of his child support for the school tuition expense.

12

## V

[¶35] We have considered all remaining issues and arguments and conclude they are either without merit or are unnecessary to the outcome of our decision. We reverse the judgment and remand for the district court to properly apply the child support guidelines consistent with this opinion.

[¶36] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte