# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 64

Katie A. Schrodt,                                        Plaintiff and Appellee

v.

Joseph D. Schrodt,                                       Defendant and Appellant

and

State of North Dakota,            Statutory Real Party in Interest and Appellee

## No. 20210211

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Heather M. Krumm, Mandan, ND, for plaintiff and appellee; submitted on brief.

Rodney E. Pagel, Bismarck, ND, for defendant and appellant; submitted on brief.

Sheila K. Keller, Special Assistant Attorney General, Bismarck, ND, for statutory real party in interest and appellee; submitted on brief.

**VandeWalle, Justice.**

[¶1]   Joseph Schrodt appealed from a divorce judgment. Joseph Schrodt raises numerous issues including the district court's denial of his request for a continuance, the court's valuation of certain marital assets, the court's calculation of child support, the court's parenting plan, and the court's award of attorney's fees and costs to Katie Schrodt. We affirm.

I

[¶2]   Katie Schrodt and Joseph Schrodt married on May 29, 2018. Joseph Schrodt is self-employed as a welder and Katie Schrodt is employed as an equipment operator. The parties share one minor child born in 2016. In 2018, Joseph Schrodt left his job at the union to open his own business, Wolf Creek Welding, in which Katie Schrodt helped with the paperwork and taxes. Katie Schrodt commenced this divorce action in October 2019.

[¶3]   On January 14, 2021, Joseph Schrodt's attorney filed a motion to withdraw based on the attorney-client relationship had irreparably broken down and Joseph Schrodt substantially failed to fulfill obligations to his attorney. His attorney also filed a request for expedited consideration. This was Joseph Schrodt's third attorney who had moved to withdraw. A hearing was held by reliable electronic means the next day but Joseph Schrodt did not appear, although Joseph Schrodt's attorney stated that she sent the information to him that morning. On January 15, 2021, the district court granted the motion to withdraw and entered the order the same day, which was 11 days before trial was scheduled.

[¶4]   The divorce trial was held January 26-27, 2021. On the morning of trial, Joseph Schrodt emailed the clerk of court requesting a continuance because he did not have an attorney. Joseph Schrodt stated at beginning of trial that he was not aware of the hearing held but was aware that his attorney withdrew. The district court denied his request for a continuance, reasoning that this was his third attorney and questioned whether he would have one even if a

continuance was granted. The court noted that Joseph Schrodt had known for at least a week that his attorney was withdrawing and that a lot of work goes into trial preparation including witnesses traveling for trial. Additionally, the court noted the request was untimely.

[¶5] Following the trial, the district court granted the parties' divorce, awarded Katie Schrodt primary residential responsibility subject to Joseph Schrodt's reasonable parenting time, distributed the marital estate, ordered Joseph Schrodt to pay child support, and awarded Katie Schrodt $36,538 in attorney's fees.

## II

[¶6] Joseph Schrodt argues the district court abused its discretion when it denied his motion for a continuance because he was not given an opportunity to respond to his counsel's motion to withdraw under N.D.R.Ct. 3.2 and the facts and circumstances warranted a continuance.

[¶7] It is well-settled that this Court does not review issues that are raised for the first time on appeal:

> The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories. The requirement that a party first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision. It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Accordingly, issues or contentions not raised . . . in the district court cannot be raised for the first time on appeal.

*Cody v. Cody*, 2019 ND 14, ¶ 15, 921 N.W.2d 679 (quoting *Hoff v. Gututala-Hoff*, 2018 ND 115, ¶ 10, 910 N.W.2d 896). Joseph Schrodt did not raise the issue that his request to continue the trial should be granted because he was not given an opportunity to respond to his attorney's motion to withdraw. Nor does Joseph Schrodt argue that the district court should not have granted the

motion to withdraw. Therefore, the issue of whether the district court complied with N.D.R.Ct. 3.2 was not preserved for this appeal.

[¶8]   "The district court has broad discretion over the progress and conduct of a trial, and the determination whether to grant a continuance lies within the sound discretion of the district court." *Lund v. Lund*, 2011 ND 53, ¶ 7, 795 N.W.2d 318 (citations omitted). This Court will not reverse a district court's decision to deny a motion for a continuance absent an abuse of discretion. *Carroll v. Carroll*, 2017 ND 73, ¶ 11, 892 N.W.2d 173. "The court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Wilson v. Wilson*, 2014 ND 199, ¶ 7, 855 N.W.2d 105 (citation omitted).

[¶9]   A motion for a continuance made after a notice of trial has been issued is governed by N.D.R.Civ.P. 40(d):

> A party seeking a continuance must make a request to continue a trial within 14 days after receiving notice of trial from the court. The trial judge scheduled to hear the case must approve any request for continuance. If unavoidable circumstances are shown, the trial judge may waive the 14-day requirement.

Under the North Dakota Rules of Court, motions for continuance "shall be promptly filed as soon as the grounds therefor are known and will be granted only for good cause shown, either by a declaration or otherwise." N.D.R.Ct. 6.1(b).

[¶10] On the morning of trial, Joseph Schrodt requested a continuance because he did not have an attorney. Joseph Schrodt acknowledged that he was aware that his attorney had withdrawn but was not aware of the hearing held. When asked why he did not request a continuance a week prior to trial, Joseph Schrodt replied that he should have but he "had a lot on his plate." When asked what efforts he made to get an attorney, Joseph Schrodt explained that he had called several attorneys, but there was conflict with all of them and the closest one was in Fargo. The district court denied his request reasoning that this was his third attorney and questioned whether he would have one even if a

3

continuance was granted. The court noted that Joseph Schrodt had known for at least a week that his attorney was withdrawing and that a lot of work goes into trial preparation including witnesses traveling for trial. Additionally, the court noted the request was untimely. Under the circumstances in this case, the district court did not abuse its discretion in denying Joseph Schrodt's request for a continuance.

## III

[¶11] Joseph Schrodt argues the district court erred in its valuation of his tools, racecar, racecar parts, and a vehicle because the court accepted Katie Schrodt's values listed in her property and debt listing without any other evidence and because the court stated Joseph Schrodt would be in the best position to know the value of the assets.

[¶12] We will not reverse a district court's findings on valuation of marital property unless they are clearly erroneous. *Lee v. Lee*, 2019 ND 142, ¶ 6, 927 N.W.2d 104 (citing *Corbett v. Corbett*, 2001 ND 113, ¶ 12, 628 N.W.2d 312). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman,* 1998 ND 192, ¶ 8, 585 N.W.2d 561 (citing *Gierke v. Gierke*, 1998 ND 100, ¶ 15, 578 N.W.2d 522). "[A] trial court, having the opportunity to observe demeanor and credibility, is in a far better position than an appellate court in ascertaining the true facts regarding property value." *Hitz v. Hitz*, 2008 ND 58, ¶ 13, 746 N.W.2d 732 (quoting *Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573). "A marital property valuation within the range of the evidence is not clearly erroneous." *Hitz*, at ¶ 13 (quoting *Hoverson*, at ¶ 13).

[¶13] Here, the district court accepted the values provided by Katie Schrodt for the 2008 GMC vehicle, tools, racecar, and racecar parts because Joseph Schrodt did not present evidence or testimony regarding the values nor did he present evidence or testimony that contradicted Katie Schrodt's values. The court noted it had a difficult time making an accurate valuation of the overall marital estate due to Joseph Schrodt's non-compliance with Katie Schrodt's

4

discovery requests and his failure to follow court orders. The court found Katie Schrodt and her witnesses to be credible and that Joseph Schrodt's testimony was conflicting, incomplete and lacked credibility. "A trial court may accept the valuations submitted by one party, or weigh one party's value testimony more heavily." *Peterson v. Peterson*, 1999 ND 191, ¶ 14, 600 N.W.2d 851 (citing *Braun v. Braun*, 532 N.W.2d 367, 370 (N.D. 1995)). The record supports the district court's valuations and the valuations are not clearly erroneous.

IV

[¶14] Joseph Schrodt argues the parenting time implemented by the district court is clearly erroneous because it denies the child the right to maintain a "parent-child relationship that is beneficial" to the child.

[¶15] Under N.D.C.C. § 14-05-22(2), the district court must "grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." "In awarding visitation to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Deyle v. Deyle*, 2012 ND 248, ¶ 17, 825 N.W.2d 245 (quoting *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113).

> A non-custodial parent's visitation may be curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health. However, a restriction on visitation must be based on a preponderance of the evidence and be accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation.

*Rustad v. Baumgartner*, 2018 ND 268, ¶ 8, 920 N.W.2d 465 (citations and quotations omitted).

[¶16] A district court's determination of parenting time is a finding of fact subject to the clearly erroneous standard of review. *Deyle*, 2012 ND 248, ¶ 17. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire

record, this Court is left with a definite and firm conviction a mistake has been made." *Schurmann v. Schurmann*, 2016 ND 69, ¶ 8, 877 N.W.2d 20 (quoting *Capes v. Capes*, 2015 ND 254, ¶ 6, 870 N.W.2d 448).

[¶17] Here, in awarding Joseph Schrodt parenting time, the district court considered the best interests factors. Joseph Schrodt was awarded parenting time every other weekend, three weeks of summer parenting time, and rotating holidays. The parenting time was limited to five counties unless Joseph Schrodt receives prior written consent by Katie Schrodt or order of the court. Joseph Schrodt argues that restricting and limiting his parenting time to one overnight every two weeks and to five counties is clearly erroneous because he posed no threat to the minor child and has been a good, caring father. This Court does not reweigh evidence nor reassess the credibility of witnesses. *Conzemius v. Conzemius*, 2014 ND 5, ¶ 6, 841 N.W.2d 716. The district court found factor (f) of N.D.C.C. § 14-09-06.2 favored Katie Schrodt. Factor (f) addresses "[t]he moral fitness of the parents." N.D.C.C. § 14-09-06.2(1)(f). The court found Joseph Schrodt's past behavior, specifically his removal of the minor child from the state in direct violation of a court order, caused concern regarding his ability to provide stability, security, and a moral foundation for the child. The district court also found factor (e) favored Katie Schrodt. When analyzing this factor, the court must examine "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14-09-06.2(1)(e). Under this factor, the court noted that Katie Schrodt testified that Joseph Schrodt frequently made negative comments about her in front of the minor child and that he had threatened to take the minor child out of state where she would be unable to find the child. The court emphasized that Joseph Schrodt had in fact removed the child from the state without notice or permission. Therefore, the court's award of parenting time to Joseph Schrodt with restrictions is supported by the record and is not clearly erroneous.

V

[¶18] Joseph Schrodt argues the district court erred in its calculation of child support because he was not underemployed.

6

[¶19] This Court applies a mixed standard of review from child support determinations:

> "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Grossman v. Lerud*, 2014 ND 235, ¶ 6, 857 N.W.2d 92 (quoting *State ex rel. K.B. v. Bauer*, 2009 ND 45, ¶ 8, 763 N.W.2d 462). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." *Richter v. Houser*, 1999 ND 147, ¶ 3, 598 N.W.2d 193.

*Eubanks v. Fisketjon*, 2021 ND 124, ¶ 6, 962 N.W.2d 427 (quoting *Gooss v. Gooss*, 2020 ND 233, ¶ 14, 951 N.W.2d 247).

[¶20] "Child support determinations are governed by the child support guidelines, N.D. Admin. Code ch. 75-02-04.1." *Brew v. Brew*, 2017 ND 242, ¶ 24, 903 N.W.2d 72 (citing *Raap v. Lenton*, 2016 ND 195, ¶ 5, 885 N.W.2d 777). "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(9).

[¶21] Joseph Schrodt argues the district court erred in finding him underemployed and imputing his income under N.D. Admin. Code § 75-02-04.1-07 because the court should have averaged his 2019 income and his proposed 2020 income he presented by testimony, and then the court should have compared it to the U.S. Bureau of Labor Statistics which would have shown he was not underemployed.

[¶22] "Determination of whether an individual is underemployed is within the discretion of the trial court." *Torgerson v. Torgerson*, 2003 ND 150, ¶ 10, 669 N.W.2d 98 (citing *Geinert v. Geinert*, 2002 ND 135, ¶ 18, 649 N.W.2d 237). A court may find an obligor is underemployed and impute the obligor's income, if "the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and

7

occupational qualifications." N.D. Admin. Code § 75-02-04.1-07(1)(b). "An obligor is presumed to be underemployed if the obligor's gross income from earnings is less than . . . [s]ix-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications . . . ." N.D. Admin. Code § 75-02-04.1-07(2). Before a court can find an obligor is underemployed and impute his income, the court must first determine the obligor's gross income from earnings. *Id.* "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7).

> Determination of a self-employed individual's income for the purpose of calculating a child support obligation is governed, at least initially, by N.D. Admin. Code § 75-02-04.1-05. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75-02-04.1-05(1). The guidelines recognize that "[s]elf-employment activities may experience significant changes in production and income over time." N.D. Admin. Code § 75-02-04.1-05(4). "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income." *Id.* "If the tax returns are not available or do not reasonably reflect the income from self-employment, profit and loss statements which more accurately reflect the current status must be used." N.D. Admin. Code § 75-02-04.1-05(3).

*Thompson v. Johnson*, 2019 ND 111, ¶ 9, 926 N.W.2d 120.

[¶23] Here, the district court found it was difficult to determine Joseph Schrodt's actual income because he appeared to be taking cash payments and not recording them when reporting his income. The court explained that it had limited other information to use in determining his income. Joseph Schrodt testified that he had not looked over his books for 2020 because he has "had a lot of stuff going on." When asked what he expected to earn in 2020, he testified that he didn't know, maybe $30,000 to $40,000. This testimony is not sufficiently documented information that would fully apprise the court of all gross income nor was there any profit and loss statements provided to the

district court. Thus, the court did not err in not averaging the two incomes because the only documented information provided was Joseph Schrodt's 2019 individual tax return and his 2018 W-2s. The court found that Joseph Schrodt's 2019 taxes showed an adjusted gross income of $20,860 and his 2018 W-2s showed that he earned $83,772 that year.

[¶24] Additionally, Joseph Schrodt argues the district court should have used the U.S. Bureau of Labor Statistics to determine whether he was underemployed. Both N.D. Admin. Code §§ 75-02-04.1-07(1)(b) and 75-02-04.1-07(2) require the use of "this state's statewide average earnings." The court used the statewide average for welders published by Job Service of North Dakota which showed the 2019 averaged income for a welder was $52,480. Joseph Schrodt's argument that the court should have used the U.S. Bureau of Labor Statistics is without merit.

[¶25] The district court presumed Joseph Schrodt was underemployed under N.D. Admin. Code § 75-02-04.1-07(2) because his income for the 2019 tax year was less than six-tenths of this state's average income for someone of his experience and education. After an obligor is properly determined to be underemployed, the court must impute income according to one of the provisions of N.D. Admin. Code § 75-02-04.1-07(3). With exceptions, N.D. Admin. Code § 75-02-04.1-07(3) states:

> [G]ross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.
>
> a.   A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.
>
> b.   An amount equal to six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications.
>
> c.   An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive

months included in the current calendar year and the two previous calendar years before commencement of the proceeding before the court, for which reliable evidence is provided.

"[T]he subdivision resulting in the greatest imputed income must be used." *McClure v. McClure*, 2003 ND 130, ¶ 8, 667 N.W.2d 575 (quoting *Buchholz v. Buchholz*, 1999 ND 36, ¶ 14, 590 N.W.2d 215).

[¶26] Joseph Schrodt's child support obligation was determined under subsection (c) by using ninety percent of his 2018 earnings, $83,773, which is the greatest average gross monthly earnings that he had in a 12-month period beginning on or after 36 months before commencement of these proceedings. The district court adopted the Child Support's calculations and found that Joseph Schrodt had a monthly child support obligation of $970 based upon his imputed net monthly income of $5,384. Therefore, the district court did not abuse its discretion in determining Joseph Schrodt was underemployed and imputing his gross income based on earning capacity under N.D. Admin. Code § 75-02-04.1-07(3)(c), and did not clearly err in finding a monthly child support obligation of $970.

VI

[¶27] Joseph Schrodt argues the district court erred in awarding attorney's fees to Katie Schrodt because the court failed to consider her needs and his lack of ability to pay.

[¶28] The district court has broad discretion to award attorney's fees in divorce proceedings under N.D.C.C. § 14-05-23. The district court's decision on whether to award attorney's fees will not be reversed on appeal unless the court abused its discretion. *Larson v. Larson*, 2016 ND 76, ¶ 32, 878 N.W.2d 54. "A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law." *Id.* (quoting *Anderson v. Baker*, 2015 ND 269, ¶ 7, 871 N.W.2d 830).

[¶29] "We have said the primary standard for awarding attorney's fees under N.D.C.C. § 14-05-23 is consideration of one spouse's needs and the other spouse's ability to pay." *Bickel v. Bickel*, 2020 ND 212, ¶ 26, 949 N.W.2d 832 (quoting *Brew v. Brew*, 2017 ND 242, ¶ 32, 903 N.W.2d 72); *see also Orwig v. Orwig*, 2021 ND 33, ¶ 41, 955 N.W.2d 34. "The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case." *Willprecht v. Willprecht*, 2020 ND 77, ¶ 45, 941 N.W.2d 556 (quoting *Heinle v. Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590). "Under that statute, we have recognized that where a party's actions have unreasonably increased the time spent on a case, attorney fees may be appropriate." *Kelly v. Kelly*, 2011 ND 167, ¶ 34, 806 N.W.2d 133 (citations omitted).

[¶30] A district court also has inherent authority to award attorney's fees as a sanction for a litigant's misconduct. *Heinle*, 2010 ND 5, ¶ 30. If a court orders a party to pay attorney's fees under its inherent authority to impose a sanction for misconduct, the court is not required to consider need and ability to pay. *Brew*, 2017 ND 242, ¶ 34. This court has explained:

> A district court also has inherent authority to sanction a litigant for misconduct. Sanctions must be reasonably proportionate to the misconduct. When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mind of the party against whom sanctions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party's ability to present or defend the party's case, and the availability of less severe sanctions.

> A district court has discretion in awarding attorney fees as a sanction in divorce actions. An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.

11

*Id.* at ¶ 32 (quoting *Lewis v. Smart*, 2017 ND 214, ¶ 32, 900 N.W.2d 812). In *Brew* and *Lewis*, this Court held that a district court is not required to consider need and ability to pay if it awarded attorney's fees under its inherent authority to impose a sanction rather than solely under N.D.C.C. § 14-05-23. *Brew*, 2017 ND 242, ¶ 34; *Lewis*, 2017 ND 214, ¶ 33.

[¶31] Here, the district court awarded attorney's fees as a sanction for Joseph Schrodt's misconduct. Although the court's findings cite N.D.C.C. § 14-05-23, the court's reasoning is clear that Katie Schrodt's attorney's fees and costs were awarded under its inherent authority to sanction a litigant for misconduct. The court reasoned that:

> Katie's attorney's fees and costs were increased due to Joseph's improper or unreasonable pre-trial actions, including him repeatedly removing the child from the state in violation of a court order, his failure to pay joint debts as required by the Interim Order, and his failure to comply with discovery requests and explicit orders of this Court. Katie's attorney's fees and costs were also increased due to Joseph's improper or unreasonable actions during and after trial, including not producing ordered documents, being on time, and taking a recess to make copies.

[¶32] The district court's findings are sufficient to adequately explain the basis of the award as a sanction for litigation misconduct. The court ordered Katie Schrodt to provide a statement of attorney's fees and costs identifying the attorney's fees and costs she incurred as a result of Joseph Schrodt's improper and unreasonable pre-trial, trial, and post-trial actions. In her statement of attorney's fees and costs, Katie Schrodt identified and explained the amount of attorney's fees that were normal and those that were abnormal due to Joseph Schrodt's misconduct. The total amount of abnormal attorney's fees was $36,538. The court found an award of $36,538 in attorney's fees was reasonable under the circumstances. The award of attorney's fees was reasonably proportionate to Joseph Schrodt's misconduct. Because the district court awarded attorney's fees under its inherent authority to impose a sanction for litigation misconduct, it was not required to consider need and ability to pay. *See Brew*, 2017 ND 242, ¶ 34; *Lewis*, 2017 ND 214, ¶ 33. We conclude the

12

district court did not abuse its discretion in awarding attorney's fees in the amount of $36,538 as a sanction for litigation misconduct.

## VII

[¶33] We affirm the judgment.

[¶34] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte