# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 196

Signe Ann Edison,                                    Plaintiff and Appellee

    v.

Jeffrey Bryce Edison,                                    Defendant and Appellant

### No. 20240119

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Justice Crothers, Justice Bahr, and District Judge Daniel S. El-Dweek joined. Justice McEvers filed an opinion concurring specially.

Michael L. Gjesdahl, Fargo, N.D., for plaintiff and appellee.

Benjamin B. Freedman, Fargo, N.D., for defendant and appellant.

## Edison v. Edison
## No. 20240119

**Tufte, Justice.**

[¶1] Jeffrey Edison appeals from an amended divorce judgment entered following remand from this Court. On appeal, he argues the district court's award of primary residential responsibility to Signe Edison was clearly erroneous because the court was biased. Jeffrey Edison also argues the district court erred in calculating his income and finding him to be underemployed for purposes of child support. We affirm the judgment.

I

[¶2] Jeffrey Edison previously appealed from a divorce judgment and an amended judgment "awarding primary residential responsibility for two children to Signe Edison, arguing error in the form of gender bias and in the court's finding that Jeffrey Edison was underemployed for purposes of child support." *Edison v. Edison ("Edison I")*, 2023 ND 141, ¶ 1, 994 N.W.2d 151. We concluded the district court's findings regarding E.E.'s best interests were clearly erroneous because they misapplied N.D.C.C. § 14-09-29(1), explaining the "court's reasoning for awarding Signe Edison primary residential responsibility over E.E. depended significantly on Signe's breastfeeding E.E." *Id.* at ¶ 19. We held the "district court's findings in support of its award of primary residential responsibility to Signe Edison were heavily influenced by improper sex-based generalizations" and remanded "for the district court to make findings under a correct application of the law." *Id.* at ¶ 23.

[¶3] In *Edison I,* Jeffrey Edison also argued "the district court erred in finding that he was underemployed for purposes of child support and for imputing income to him," and this Court agreed. 2023 ND 141, ¶ 36. We held "[t]he court's finding that Jeffrey Edison was underemployed is clearly erroneous because it lacked evidence to support the 'statewide average earnings for persons with similar work history and occupational qualifications.'" *Id.* at ¶ 41. This Court further concluded, "the court erred because it failed to calculate Jeffrey Edison's

1

gross income and made a determination solely on the basis of his adjusted gross income from his tax returns." *Id.* at ¶ 44.

[¶4] After remand, the district court held a status conference. The parties stipulated that E.E. was no longer breastfeeding and that the district court could receive and rely on relevant pages of the U.S. Bureau of Labor Statistics wage employment survey as evidence. The court also heard argument on the issues on remand. Thereafter, the district court entered orders for amended judgment in two parts. The first part addressed the best interest factors under N.D.C.C. § 14-09-06.2(1)(a)-(m) and awarded primary residential responsibility to Signe Edison. The second order addressed the issue of child support calculations and found Jeffrey Edison was underemployed. Both orders were incorporated into the second amended judgment. Jeffrey Edison appeals from the second amended judgment.

II

[¶5] Jeffrey Edison argues he was denied due process on remand because the district court failed to follow instruction on remand to reconsider the award of residential responsibility without improper sex-based generalizations. He argues the district court maintained its bias and prejudged the matter. He asks this Court to award equal residential responsibility or to reassign the case to a different judge.

[¶6] "At a minimum, [due process] requires the proceedings be overseen by an impartial fact-finder." *Koon v. State*, 2023 ND 247, ¶ 15, 1 N.W.3d 593 (citation omitted). "A fact-finder is not impartial if the fact-finder prejudges the case, if the fact-finder harbors an actual bias towards a participant or if a high probability exists the fact-finder harbors bias towards a participant." *Id.*

[¶7] Jeffrey Edison argues the district court's bias is shown through the court's commentary on how to proceed after remand and its categorization of gender-bias as the "breastfeeding issue." At the status conference, the district court asked if it needed to receive further evidence or if it may review the record and simply remove any reference to breastfeeding in its findings. After review of the record, we conclude the district court's comments do not rise to the level of

2

judicial bias or impartiality. *See Schadler v. Job Serv. N.D.*, 361 N.W.2d 254, 258 (N.D. 1985) (holding inartful comments are an insufficient basis to establish bias).

[¶8] Jeffrey Edison next argues the district court's findings are not supported by the record. He argues the district court must be biased because the only difference between the court's final order and the interim order, which awarded equal residential responsibility, was the court's findings on breastfeeding.

[¶9] Adverse rulings alone are not evidence of judicial bias or partiality. *Wisnewski v. Wisnewski*, 2020 ND 148, ¶ 65, 945 N.W.2d 331. "In a bench trial, it is presumed the district court only considered competent evidence because a judge, when deliberating the ultimate decision, is capable of distinguishing between admissible and inadmissible evidence." *Koon*, 2023 ND 247, ¶ 17.

[¶10] In *Edison I*, we explained the district court's analysis of the best interest factors, namely factors (a), (c), and (m), relied significantly on breastfeeding. 2023 ND 141, ¶¶ 16-19. The district court eliminated those findings in its amended order. The district court followed our directive to make findings under the correct application of law. The district court's award is not gender-biased.

[¶11] Jeffrey Edison has not shown bias. Nor has Jeffrey Edison shown the district court prejudged the issue. We affirm the district court's award of primary residential responsibility to Signe Edison.

III

[¶12] Jeffrey Edison argues the district court erred in calculating his income and finding him underemployed. "Determination of whether an individual is underemployed is within the discretion of the trial court." *Schrodt v. Schrodt*, 2022 ND 64, ¶ 22, 971 N.W.2d 861. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Edison I*, 2023 ND 141, ¶ 37 (citations omitted).

[¶13] Jeffrey Edison argues the district court improperly determined his income from past years, which were not reliable indicators of his current and future earnings. He also argues the court failed to adequately compare his earnings to

the state's statewide average earnings for persons with similar work history and occupational qualifications and improperly subtracted his self-employment losses from his gross income.

A

[¶14] Jeffrey Edison is self-employed. Our case law regarding self-employment explains:

> Determination of a self-employed individual's income for the purpose of calculating a child support obligation is governed, at least initially, by N.D. Admin. Code § 75-02-04.1-05. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75-02-04.1-05(1). The guidelines recognize that "[s]elf-employment activities may experience significant changes in production and income over time." N.D. Admin. Code § 75-02-04.1-05(4). "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income." *Id.* "If the tax returns are not available or do not reasonably reflect the income from self-employment, profit and loss statements which more accurately reflect the current status must be used." N.D. Admin. Code § 75-02-04.1-05(3). A district court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not reasonably reflect the obligor's income without ordering the parties to present more information and making specific findings of fact.

*Thompson v. Johnson*, 2019 ND 111, ¶ 9, 926 N.W.2d 120.

[¶15] Jeffrey Edison argues the district court erred by using his 2021 tax return because it was not a reliable indication of his future circumstances. The district court explained, "Jeffrey's tax returns are adequate to reflect his income as the Court found his testimony provided an incomplete representation of his income for 2022, since his self-employment income and losses were not yet known and his predictions are based off a short period of time." The court further found, "Jeffrey did not argue his tax returns were inaccurate and they were further corroborated by his father, a Certified Public Accountant, who prepared them."

4

[¶16] Jeffrey Edison argues his testimony is a more reliable indicator of future circumstances. Regarding Jeffrey Edison's testimony, the district court found:

> Jeffrey testified at trial that he can withdraw approximately $2,500.00 per month from Edison Squared Investments LLC, and that he has an income from JBE Construction, but that is not as predictable. Jeffrey's 2021 tax return shows a gross annual income of negative $13,659.00. *Docket # 461.* Page 12 of his tax return breaks down his income. *Id.* Specifically, JBE Construction had a business income of $12,577.00 and Edison Squared Investments LLC, had a loss of $26,237.00, resulting in a total income for Jeffrey of negative $13,659.00. *Id.* Additionally, Schedule C on page 24 of Jeffrey's tax return also shows JBE Construction's small profit of $12,577.00; Schedule E on page 29 also shows Edison Squared Investments, LLC's loss of $26,237.00. *Id.* Edison Squared Investments LLC Balance Sheet has retrained [sic] earnings of negative $54,374.00. *Docket # 313.* Retained earnings are the profit a company has left after paying all its costs, taxes, and dividends to shareholders. The negative retained earnings support the accuracy of the loss on Jeffrey's tax return. Jeffrey's 2021 tax return and Edison Squared Investments LLC's Balance Sheet contradict his testimony that he can draw $2,500.00 per month or $30,000.00 per year from Edison Squared Investments LLC.

[¶17] "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7). "If tax returns are unavailable or the court finds the returns unreliable, the guidelines require the court to use profit and loss statements which more accurately reflect the obligor's current self-employment income, in order to properly calculate income." *Entzie v. Entzie*, 2010 ND 194, ¶ 6, 789 N.W.2d 550; *see also* N.D. Admin. Code § 75-02-04.1-05(3). "When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used." N.D. Admin. Code § 75-02-04.1-05(4). In this case, the district court found the 2021 tax return more reliable than Jeffrey Edison's testimony. The district court followed the guidelines and did not err by using Jeffrey Edison's 2021 tax return to compute his income.

[¶18] Jeffrey Edison argues the district court failed to compare his earnings to the statewide average earnings for persons with similar work history and occupational qualifications. "Both N.D. Admin. Code §§ 75-02-04.1-07(1)(b) and 75-02-04.1-07(2) require the use of this state's statewide average earnings." *Edison I*, 2023 ND 141, ¶ 40 (cleaned up). "District courts must refer to a source demonstrating the average earnings for the entire state of North Dakota; evidence of average earnings for a different geographic area is insufficient. The statewide average earning reports published by Job Service of North Dakota are sufficient." *Id.*

[¶19] The district court relied on the stipulated exhibits, the U.S. Bureau of Labor Statistics May 2021 State Occupational Employment and Wage Estimates for North Dakota, and compared Jeffrey Edison's earnings to the statewide average:

> Next, under subsection (b), regardless of whether the Court agrees with Jeffrey or Signe's argument whether he should be considered either a construction laborer or a construction manager for subsection (b) purposes, a negative income of $13,659.00 is still less than both $26,952.00 or $63,660.00 (as Jeffrey argues he is a construction laborer, and $44,920.00 is the statewide average for Construction Laborers, and six-tenths of that equals $26,952.00; or as Signe argues that he is considered a construction manager, and $106,100.00 is the statewide average for construction managers, and six-tenths of that equals $63,660.00). N.D.A.C. § 75-02-04.1-07(3)(b).

The district court compared Jeffrey Edison's earnings to the statewide average earnings.

C

[¶20] Jeffrey Edison argues the district court erred by subtracting his self-employment losses from his gross income, and by failing to include his refundable tax credits. We agree the district court misapplied the law. However, the errors are harmless because they do not change the result.

[¶21] The district court explained, "Jeffrey's total gross income includes his self-employment earnings from JBE Construction and his losses from Edison Squared Investments LLC, which equaled a total gross income from his 2021 federal and state tax return as negative $13,659.00," and found Jeffrey is considered to be underemployed under N.D.A.C. § 75-02-04.1-07(2). Jeffrey Edison argues the loss from Edison Squared cannot be deducted from his other income because each self-employment activity must be considered independently if they maintain separate finances, and a loss of one self-employment activity cannot be used to reduce other income unless the resulting amount equals or exceeds the greatest of the subdivisions of N.D. Admin. Code § 75-02-04.1-05(6).

[¶22] That guideline provides:

> When less than three years were averaged under subsection 4, a loss resulting from the averaging may be used to reduce *other income that is not related to the self-employment activity that produced the loss* only if the loss is not related to a hobby activity and monthly gross income, reduced by one-twelfth of the average annual self-employment loss, equals or exceeds the greatest of:
> a.  A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage;
> b.  An amount equal to six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications; or
> c.  An amount equal to eighty percent of the obligor's greatest average gross monthly earnings, calculated without using self-employment losses, in any twelve consecutive months included in the current calendar year and the two previous calendar years before commencement of the proceeding before the court.

N.D. Admin. Code § 75-02-04.1-05(6) (emphasis added).

[¶23] Signe Edison relies on our decision in *Shae v. Shae*, which stated, "N.D. Admin. Code § 75-02-04.1-05(6) and (7) restrict when loss may be applied to reduce income unrelated to self-employment." 2014 ND 149, ¶ 16, 849 N.W.2d 173 (explaining "the income used in the district court's calculations was solely self-employment income" and "Shae's farming losses should have been included

7

in determining his net income from self-employment for the purposes of determining his gross income"). However, after *Shae*, the Administrative Code was amended, providing clarification. Effective September 1, 2015, the Code clarified: "When less than three years were averaged under subsection 4, a loss resulting from the average may be used to reduce *other* income that is not related to *the* self-employment *activity that produced the loss* only if the loss is not related to a hobby activity . . . ." N.D. Admin. Code § 75-02-04.1-05(6) (2015) (emphasis added to show additions); *see also* N.D. Admin. Code § 75-02-04.1-05(7) (2015) (adding the same clarifying language). Under the plain language of the Administrative Code, a loss, including a loss from an unrelated self-employment activity, may be used to reduce other income that is not related to the self-employment activity that produced the loss. *See also Gerving v. Gerving*, 2022 ND 2, ¶ 19, 969 N.W.2d 184 ("The plain language of the child support guidelines does not preclude using the loss to reduce income that is related to the self-employment activity that produced the loss.").

[¶24] The district court did not make a finding whether or not Jeffrey Edison's two self-employment businesses are related. If, as in *Gerving*, 2022 ND 2, ¶ 19, the income was related to the self-employment activity that produced the loss, then the guidelines allow the income to be reduced by the loss. If the two self-employment activities are related, then the district court's application of the loss to reduce the income was correct. On the other hand, if the two self-employment activities are unrelated, the income from JBE Construction may be reduced by the loss resulting from Edison Squared Investments only if the monthly gross income, reduced by one-twelfth of the self-employment loss, equals or exceeds the greatest of subsections (a), (b) or (c). N.D. Admin. Code § 75-02-04.1-05(6). Because the district court did not make those findings or calculations, it did not comply with N.D. Admin. Code § 75-02-04.1-05(6).

[¶25] If the two self-employment activities are unrelated, then under N.D. Admin. Code § 75-02-04.1-05(6), the district court erred by subtracting the loss from Jeffrey Edison's income because the monthly gross income, reduced by one-twelfth of the self-employment loss, does not equal or exceed the greatest of subsections (a), (b) or (c). The court determined that Jeffrey Edison's annual gross income, other than the Edison Squared loss, was $12,577, which is a monthly

8

gross income of $1,048. The loss was $26,237 annually, or $2,186 per month, which is $2,004 when reduced by 1/12th. If the loss is subtracted from the gross income, it results in a negative number, which cannot exceed or equal any of the three subdivisions of N.D. Admin. Code § 75-02-04.1-05(6).[1]

[¶26] Jeffrey Edison also argues the district court failed to include his earned income credit of $3,618 and his child tax credit of $1,800 in his gross income for 2021. Under N.D. Admin. Code § 75-02-04.1-01(4)(b), "gross income" includes "refundable tax credits" such as the earned income tax credit and the child tax credit. The district court misapplied the guidelines by failing to include the earned income tax credit and child tax credit in calculating Jeffrey Edison's gross income.

[¶27] Because the district court erred in its application of the child support guidelines, we must examine whether the error was harmless. "[A]n error is harmless if it does not affect the outcome of the case or a party's substantial rights." *Senger v. Senger*, 2022 ND 229, ¶ 12, 983 N.W.2d 160; N.D.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." N.D.R.Civ.P. 61.

[¶28] The district court found Jeffrey Edison's annual gross income, other than the Edison Squared loss, was $12,577. It failed to include his earned income tax credit of $3,618 and his child tax credit of $1,800, which increases the annual gross income to $17,995. If the two self-employment activities are unrelated, then the loss cannot be deducted under N.D. Admin. Code § 75-02-04.1-05(6), and we

---

[1] Inclusion of the tax credits in the gross annual income does not change the outcome of the calculations under N.D. Admin. Code § 75-02-04.1-05 because the result still does not exceed or equal any of the three subdivisions of subsection six.

compare $17,995 to the statewide average earnings. If they are related, the income is reduced by the loss, resulting in a negative income. As a construction laborer, Jeffrey Edison is presumed underemployed if he earns less than 6/10 of $44,920 or $26,952. As a construction manager, he is presumed underemployed if he earns less than 6/10 of $106,100, or $63,660. Whether or not his self-employment activities are related, under either category, Jeffrey Edison is underemployed. Therefore, the district court's errors in application of the child support guidelines are harmless because they do not change the result.

IV

[¶29] We affirm the judgment.

[¶30] Jerod E. Tufte, Acting C.J.
Daniel J. Crothers
Douglas A. Bahr
Daniel S. El-Dweek, D.J.

**McEvers, Justice, concurring specially.**

[¶31] I concur with the majority that the district court's amended judgment should be affirmed. I respectfully continue to disagree that remand was necessary on the issue of primary residential responsibility because I do not believe the court was heavily influenced by improper sex-based generalizations in its original findings. Majority, at ¶ 2.

[¶32] Lisa Fair McEvers

[¶33] The Honorable Daniel S. El-Dweek, District Judge, sitting in place of Jensen, C.J., disqualified.

10